# Gross Loge des Deutschen Order des Harugari des Staates Illinois, Appellants, v. Maria Brausch et al., Appellees.

## Gen. No. 16,027.

### Same v. Eliza Lowen et al., Appellees.

## Gen. No. 16,028.

### Same v. Mina Trowbridge et al., Appellees.

## Gen. No. 16,029.

### Same v. Emilie Bogenhagen et al., Appellees.

## Gen. No. 16,030.

## Consolidated For Hearing.

FRATERNAL BENEFIT SOCIETIES—*who entitled to funds of subordinate lodge upon dissolution.* Held, under the constitution and by-laws of the particular order involved in this case, that the grand lodge of such

order was entitled to the money in the possession of the subordinate lodge at the time of the surrender of its charter.

Bills for accounting, etc. Appeals from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and remanded with directions. Opinion filed January 16, 1912.

SOL LEVISOHN and ISRAEL COWEN, for appellant.

MATTHEW J. HUSS, JOSEPH SABATH and AMMERI, HUMPHREY & JOYNER, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

By its amended bills of complaint in four cases in the Circuit Court, the Grand Lodge of the German Order of Harugari of the State of Illinois (Die Gross Loge des Deutschen Ordens der Harugari des Staates Illinois), claimed accountings and decrees against subordinate lodges respectively (and their officers), which had surrendered their charters as such lodges to the complainant, but had refused to account and pay over the moneys in their hands in accordance with the regulations, by-laws and rules of the order. In each of the bills the subordinate lodge and its officers are made defendants. In all respects, except the amounts claimed the bills of complaint are alike and seek an accounting and recovery upon the theory that the moneys and funds sought to be recovered are impressed with a trust, and on the voluntary surrender of the charter and dissolution of the lodge in each case, such moneys and property should be paid over and delivered to the complainant, in pursuance of the regulations, by-laws and rules of the order.

The cases were consolidated for hearing in the Circuit Court, and a decree was entered in each case dismissing the bill for want of equity. The complainant, the Grand Lodge of the State of Illinois, prosecutes an appeal from each decree, and the appeals in Numbers

16,028, 16,029 and 16,030 in this court have been consolidated by order of the court with number 16,027 for hearing upon one set of abstracts and briefs.

The bills and the evidence show the character of the organization of the complainant and its subordinate lodges. This in part appears in Freundschaft Lodge v. Alchenburger, 235 Ill. 438, and in the same case in this court, Alchenburger v. Freundschaft Lodge, 138 Ill. App. 204.

The averments of the bills and the proofs show that the United States Grand Lodge of the German Order of Harugari is a voluntary organization with a constitution governing its actions and that it is the Supreme Lodge within the order of Harugari. Subordinate to it are the Grand Lodges in the various states, among which is the complainant, the Grand Lodge of the State of Illinois. This lodge exercises the highest jurisdiction in this state and is exercising its power under the fraternal state law of Illinois of 1893. Subordinate to the Grand Lodge of the state are subordinate lodges within the state, consisting of men's lodges and women's lodges. Prior to the Constitution of 1904 the women's lodges had no participation in the death fund of the order, but after that period they became entitled to such participation by paying an increased *per capita* tax amounting to $1.20 per annum. The order is organized not for pecuniary profit but is a fraternal society.

In the years 1894 and 1895 respectively four subordinate lodges to the complainant, namely, Hertha Lodge No. 73, Einigeit Lodge No. 74, Treue Schwester Lodge No. 79 and Immergruen Lodge No. 82, all of the Hertha Degree, received and accepted their charters from the complainant. The charters of the above defendant lodges were signed by the officers of the United States Grand Lodge, and the State Grand Lodge. The charters for all the four subordinate lodges, defendants, were the same except as to dates and names.

They each provided that the lodge should consist of at least five members, and that the books and papers of the lodge must be submitted at all times to the Grand Lodge for examination whenever dissatisfaction is expressed by any member with the decisions and resolutions of the lodge; that each officer before his installation should be examined as to whether he possessed the necessary qualifications, by the president or by any grand officer deputized for the purpose. Each lodge was empowered to enact such by-laws as it might deem best for the welfare of the lodge, provided such by-laws should not be in conflict with the constitution of the order. Each lodge was granted all rights and privileges of a lodge as long as it worked within the limits of the constitution. Should, however, the lodge transgress the same, then the charter and papers and all the property of the lodge should be forfeited and delivered to the Grand Lodge. In case the lodge cannot exist all its property must be delivered to the Grand Lodge.

The Hertha degree was a degree used by the order and had for its purpose the giving to women, married and unmarried, the opportunity to participate in advancing the tenets and privileges of the order, such as mutual assistance in sickness, distress and death, as well as the promotion of social ties among families through lodge meetings and festivities.

By the Constitution of the United States Grand Lodge it is provided that the State Grand Lodge has final jurisdiction and is the highest tribunal of the order within the state, and that no subordinate lodge can exist without the consent of the State Grand Lodge, and if application for a charter is made the Grand Lodge possesses the power to accept or reject such application, and in case of acceptance it shall recommend the same to the United States Grand Lodge. The State Grand Lodge, with the consent of the United States Grand Lodge, is empowered to sus-

pend any charter for any period of time or to revoke the same, and may also amend the constitution for subordinate lodges within its jurisdiction, in order that the laws shall correspond with the laws of the state where such Grand Lodge exists; also to accept appeals to redress all wrongs existing in subordinate lodges, to designate and regulate all ways and means for its own support, and to perform all other matters which promote the interests of the order, provided the same do not conflict with the laws of the order or country.

The evidence tends to show that the defendant lodges received their charter existence from the Illinois State Grand Lodge, and accepted such charters and acted under the same, recognizing the jurisdiction of the State Grand Lodge. Each of the defendant lodges became and was, pursuant to special act of the legislature, approved March 26, 1869, a corporation, and they each remained a Harugari lodge as such up to or about the first day of October, 1904, when each of the said defendant lodges by unanimous vote, for reasons which are not important or material here, returned the fraternal charter under which they had been existing, through their representatives, to the State Grand Lodge and the State Grand Lodge, the complainant, has ever since had possession of the same. The defendant lodges, however, refuse to pay their funds or deliver their securities over to the State Grand Lodge, according to the by-laws and charter regulations of the order, and have either retained the same or divided the funds and moneys among their members, or have transferred such moneys and funds to new organizations which were organized by the members of the respective defendants when they voted to surrender their charters.

The controversy in these cases arises upon the true intent and meaning of the charter, by-laws, rules and regulations of the order with regard to the proper and rightful custodian of the moneys, funds and property

of subordinate lodges which have dissolved and surrendered their charters. The contention of the complainant is that under the charters, by-laws, rules and regulations of the order, such moneys and property should be delivered by the subordinate lodges, upon their ceasing, to be lodges in the order, to the State Grand Lodge, the complainant, by which such moneys, funds and property are to be held in trust for any new organization or lodges which may be formed in place of the dissolved lodges, when the moneys, funds and securities so turned over to the Grand Lodge of the State were to be paid and turned over to the new organizations.

The constitution of the United States Grand Lodge in Article XII, Section 6, provides:

"If a subordinate lodge is suspended for a certain period, or expelled, or its charter is surrendered or forfeited, it becomes the duty of the last installed officers and members, or those who may be possessed thereof, on demand duly made, to assign, transfer and deliver the charter, books, papers, property and funds of the lodge to the president or vice-president who may especially be authorized for this purpose by the Grand Lodge or its president. Any officer or member refusing to deliver any of the property of the lodge when demanded shall be and remain expelled forever even if the charter and all the property be returned to the lodge."

Section 7 of the same Article provides, that all effects and funds which are received by the Grand Lodge under Section 6 shall be kept separate and apart from the other funds and property of the Grand Lodge, and shall never be and constitute a part of the funds of the Grand Lodge, but shall always be preserved and be returned to the Lodge after the expiration of its suspension, and reinvestment of its charter; provided, however, if such Lodge is not renewed or installed within three years the funds shall be embodied in the

general funds of the Grand Lodge.

The proofs show that prior to the filing of the bill in each case a notice in writing was served upon each of the defendants which had money, funds and securities and property of their respective lodges by the complainant, the State Grand Lodge, demanding immediate delivery thereof to the Grand Secretary of the complainant, and designating certain persons in the notice named to receive the same. This notice was given in accordance with the constitution of the order.

Upon consideration of the evidence and proofs, which are very voluminous, we are of the opinion that the complainant, the Grand Lodge of the State of Illinois, under the by-laws, rules and regulations of the order, became entitled to the money in the possession of each lodge upon the surrender of the charter of that lodge, and that it was the duty of the defendant lodges respectively, upon the voluntary surrender of their charters, to turn over to the complainant all property belonging to the lodge, and pay over all funds belonging to the lodge to the complainant.

We are of the opinion that the proofs show that the defendant in each case wilfully violated the laws, rules, and regulations of the society in disposing of the funds shown to be in its hands and possession in the manner in which those funds were disposed of. In our opinion the money shown to be in the possession of the respective defendants was contributed under the charter and by-laws and rules and regulations of the order, and was dedicated to the purposes of the order; and that from the time when it was contributed to the defendant lodges it was held in trust by those lodges and their officers, or by those into whose hands it was committed, for the uses and purposes of the order and under the rules and regulations of the order. It was also held by the defendant lodges and their officers respectively in trust to pay over to the State Grand Lodge, the complainant, in case of the surrender of

the charter of the defendant lodges and the dissolution thereof. The defendants, therefore, either as lodges or as members of the lodges had no power to divert the money in their hands from the purposes of the order.

In State Council v. Sharp, 38 N. J. Eq., page 24, there was involved the question as to the right of the Grand Order of the United American Mechanics to recover and hold for the purposes of that order funds of a subordinate council which had voluntarily disbanded and surrendered its charter to the State Council, and had divided all of its effects among its members, and it was held that the moneys in the hands of the defendants were impressed with a trust; and that the attempt of the subordinate council to distribute the money contrary to the rules and regulations of the order was a violation of the trust, and that the complainant had a right to recover the funds so attempted to be diverted.

In Knights of Pythias v. Germania Lodge, No. 50, 56 N. J. Eq., 63, a similar question was presented, and the vice-chancellor held as follows:

"It is familiar law that funds accumulated as were these here in question become, as soon as paid in, impressed with a trust with all its consequences. In this case, the terms of the trust are found in the constitutions of the Supreme, Grand and subordinate lodges, and the laws of the former and by-laws of the latter. The funds being impressed with such a trust cannot lawfully be diverted therefrom, and all persons aiding and assisting in such diversion are guilty of a breach of trust and liable for the consequences." (Citing numerous authorities.)

In Hermanns-Soehne v. Wolfer, 42 Col. 393, a suit was brought by the Grand Lodge of the Sons of Hermann against certain individuals, who were formerly officers of a subordinate lodge of the same order, to recover certain funds alleged to have been wrongfully

diverted and appropriated among themselves and other members of the subordinate lodge. The subordinate lodge in that case had disbanded and had divided its assets among its members, instead of paying them over to the Grand Lodge as required by the constitution of the order. The court held upon the authority of the above cited cases that the assets held by the subordinate lodge and its officers were held in trust, and that the Grand Lodge could maintain an action against the officers of the subordinate lodge for the funds misappropriated and divided among themselves without bringing an action against the subordinate lodge itself although incorporated, since the Grand Lodge had the right to follow the trust fund into the hands of such officers.

In our opinion the bill presents a well established ground for an accounting and recovery against the defendant lodges, respectively, for all funds and property in their hands at the time of the surrender of their charters; and that the evidence tends to show that the defendant Hertha Frauenverein had on hand at the time of the surrender of its charter the sum of $802.93; and that the Treue Schwester Lodge, No. 79, defendant, and the other defendant members of such lodge, had on hand the sum of $2,089.04 belonging to such lodge; and that the Immergruen Lodge No. 82 had the sum of $605.34 belonging to such lodge; and that the defendant Einigkeit Frauenverein had the sum of $993.73 on hand when it surrendered its charter.

In our opinion, the complainant is equitably entitled to a decree against the defendants respectively for the above amounts, and that the chancellor erred in dismissing the bills for want of equity.

A motion was made by the appellees and reserved to the hearing that the appeals be dismissed for the failure to file an abstract of record in compliance with the rules of court, or that appellant be ordered to pay

the costs of the additional abstract filed herein. Both branches of the motion are denied.

The decree in each case is therefore reversed and the case is remanded with directions to the court below to enter a decree in favor of the complainant in each case for the amount of money shown by the evidence to be in the hands of or possessed by the respective defendants.

*Reversed and remanded with directions.*